**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-2902
Fax: (212) 977-1632
Gary F. Eisenberg
(GEisenberg@perkinscoie.com)
Amir Gamliel (AGamliel@perkinscoie.com)
(admitted Pro hac vice)

*Counsel for the Official Committee of
Unsecured Creditors*

In re:

**SITO MOBILE SOLUTIONS, INC.,**

Debtor.

Case No.: 20-21436
*(Jointly administered)*

Chapter 11
Hearing Date: 2/2/2021 at 11:00 a.m. ET
Judge:   Honorable Stacey L. Meisel
Re:      DI 107

**STATEMENT OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS ON THE MOTION OF THE
DEBTORS FOR ENTRY OF AN ORDER EXTENDING EXCLUSIVITY**

The Official Committee of Unsecured Creditors (the "Committee") of SITO Mobile Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") submits this response (the "Response") to the Debtors' motion for entry of order extending exclusivity [Docket No. 107] (the "Motion"). In support of this Response, the Committee respectfully states as follows:

**RESPONSE**

1.     The Debtors are correct to point out that these cases were only three months old as of the filing of the Motion, and while the Debtors have requested a fittingly limited extension of

exclusivity, the Committee has serious concerns regarding the Debtors' ability to reorganize as a viable go-forward business. In order to maintain their exclusive right to propose a plan, the Debtors must make productive use of the remaining "breathing spell" provided by chapter 11 and demonstrate a serious commitment to maximizing their Estates' assets for the benefit of their creditors.

2. Since the start of the case, the Debtors have struggled to demonstrate a going-concern business purpose. The Debtors have stated that their historic business model WAS no longer viable as a result of increased competition and technology changes in their sector. For the first few months of this case, the Debtors have professed that a pivot to a new, decentralized business model was possible, and that patent infringement litigation would provide substantial cash recoveries to fund both new operations and creditor recoveries. In response to the Committee's inquiries on each of these fronts, the Debtors have responded, in broad strokes, that they intended to remain cash flow positive through a possible combination of achieving profitability under their business plan, settling or otherwise monetizing their infringement lawsuits, and (possibly) securing an additional round of financing.

3. The outcome of the Debtors' new business operations has yet to be ascertained, but the Debtors have stated that numerous new contracts are in their "pipeline" rapidly progressing toward revenue generation, with the first new receivable from 2021 budgeted for March 15, 2021. The problem with these projections is that the Debtors have to date failed to provide the Committee with evidence that would support an inference that their new operations are viable. As ordered by the *Second Interim Order Authorizing Post-Petition Financing* (the "Second DIP Order") [Docket No. 99], Debtors are required to provide the Committee with bi-weekly reporting describing any budget variances and any revisions to the status of the pipeline contracts. ¶5 ("Every two (2) weeks,

beginning from the date of entry of this Second Interim Order, the Debtors shall provide the Unsecured Creditors Committee with a report on: (i) any budget variances; and (ii) revisions to the status of the pipeline contracts."). The Committee has requested, but not yet received any formal reporting, and has been forced to rely on the Debtors' informal updates regarding their progress. The Committee, while mindful of the challenges of operating as a debtor-in-possession, can only place limited credence on the Debtors' unsupported statements. During any extended exclusivity period, the Committee expects Debtors to convincingly demonstrate the viability of their new business plan by converting their pipeline contracts into real revenue and to provide the Committee with the reporting required by the Second DIP Order.

4. The Debtors also continue to place significant weight on their ability to monetize the patent infringement lawsuits. While Debtors have consistently maintained that there is significant value in their patent portfolio, litigation outcomes are uncertain and expected to be remote in time. Furthermore, the Committee and Debtors are far from reaching an accord on how potential litigation recoveries would be distributed among the Debtors' estates.

5. Based on the Budget filed as Exhibit A to the Second DIP Order, the Debtors will only remain cash flow positive through the week of March 1, 2021, barring additional financing efforts, none of which are assured to bear fruit. To the Committee's knowledge, the Debtors have not initiated negotiations with their current DIP Lenders for additional financing or sought other financing alternatives, instead seeming to prefer the ad hoc manner in which they have secured financing for their cases thus far.

6. Accordingly, while the Committee is open to a short extension of exclusivity at this time and remains open to working with the Debtors on a possible consensual plan of reorganization, the Committee is concerned about the Debtors' ability to remain administratively

solvent, successfully emerge from chapter 11, and/or to demonstrate that further extensions of exclusivity may be warranted.  Furthermore, if the Debtors begin dissipating estate assets through unprofitable operations, the Committee may be forced to seek termination of exclusivity for cause or to seek other actionable alternatives in order to conserve the estates' assets for the benefit of the unsecured creditors.

## RESERVATION OF RIGHTS

7.      Nothing contained herein shall constitute a waiver of the Committee's rights or remedies under the Bankruptcy Code or applicable law, including without limitation, the right to seek termination of exclusivity earlier than the Debtors' requested extension.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that, to the extent the Bankruptcy Court grants the relief requested in the Motion, that it concurrently establish deadlines to compel the Debtors to advance towards a viable exit-plan, including possibly setting forth deadlines for filing a disclosure statement and plan in these chapter 11 cases, and that it grant such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Date:  January 25, 2021          By:   */s/ Gary F. Eisenberg*
                                                       **PERKINS COIE LLP**
                                                       1155 Avenue of the Americas,
                                                       New York, NY 10036-2711
                                                       Telephone:  (212) 262-2902
                                                       Fax:  (212) 977-1632
                                                       Gary F. Eisenberg  (GEisenberg@perkinscoie.com)
                                                       Amir Gamliel (AGamliel@perkinscoie.com)
                                                       (*admitted pro hac vice*)

                                                       *Counsel for the Official Committee of Unsecured Creditors*

141275-0001/151076292.5