**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-2902
Fax: (212) 977-1632
Gary F. Eisenberg
(GEisenberg@perkinscoie.com)
Amir Gamliel (AGamliel@perkinscoie.com)
(admitted pro hac vice)

*Counsel for the Official Committee of Unsecured Creditors*

In re:

**SITO MOBILE SOLUTIONS, INC.,**

Debtor.

Case No.: 20-21436
*(Jointly administered)*

Chapter 11

Hearing Date: 2/2/2021 at 11:00 a.m. ET
Judge:    Honorable Stacey L. Meisel
RE:       DI 110

**OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF ALLIED WORLD FOR RELIEF FROM THE AUTOMATIC STAY**

The Official Committee of Unsecured Creditors (the "Committee") of SITO Mobile Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") submits this opposition (the "Opposition") to the motion of Allied World National Insurance Company ("Allied World") [Docket No. 110] (the "Motion") and in support thereof states as follows:[1]

---

[1] Capitalized terms used but not defined in the Opposition shall have the meanings assigned to them in the Motion.

**PRELIMINARY STATEMENT**

1. Allied World seeks an order stating that the automatic stay is inapplicable to the Allied World Excess Policy or, if it does apply, the stay should be lifted to allow the Coverage Litigation to proceed. In a bankruptcy case, such a policy becomes a particularly valuable estate asset. The Debtors have paid substantial sums to put the Allied World Excess Policy in place, and Allied World should not be permitted to circumvent the automatic stay by launching a pre-emptive "coverage dispute lawsuit" that is in substance nothing more than a subterfuge attempt to deny coverage under the Allied World Excess Policy.[2]

2. Notwithstanding Allied World's attempt to parse whether its coverage and the proceeds thereof are property of the Debtors' estates, which they are, Allied World fails to acknowledge and substantially understates the harm that lifting the stay could have on the Debtors' estates. A declaratory judgment in favor of Allied World would include findings that adversely impact the Debtors' rights and interests in coverage, any proceeds attained through the defense in the underlying SEC Enforcement Action, or any future enforcement action that directly names the Debtors as defendants. Furthermore, allowing Allied World to proceed may invite additional relief from stay actions from the Debtors' other insurers.

3. Denial of coverage as to Debtors and/or as to their former Directors and Officers can have deleterious and irreversible effects on the Debtors' reorganization efforts. First, it is not clear on the face of the Allied World's pleadings that the Debtors have no interest in the Allied World Excess Policy or that the Debtors have no interest in making future claims against the Allied World Excess Policy given the ongoing state of the SEC Enforcement Action. Through their

---

[2] As an initial matter, the Coverage Litigation naming debtor SITO Mobile Ltd. as a defendant should never have been commenced without leave of this Court because the automatic stay unequivocally bars the commencement of judicial proceedings that could have been commenced prior to petition date. 11 U.S.C. § 362(a)(1).

critical vendors motion, the Debtors sought court authority to use estate property to pay prepetition debts for a vendor facilitating discovery in response to the SEC's subpoena. To the extent that the Debtors have legitimate grounds to seek insurance coverage on account of such payment (and/or other pre-petition payments that have not yet been reimbursed by insurance), the Committee fears that an adverse judgment in the Coverage Litigation would foreclose any possibility of the Debtors' estates receiving payments from Allied World that would in turn be available for distribution to unsecured creditors. Stating that the Debtors only have a speculative interest in the Allied World Excess Policy because they have not yet made a claim when the SEC's investigation is ongoing is flat out wrong. The Debtors, while cooperating with the SEC, may yet have costs related to the SEC Enforcement Action or the investigation which are appropriately covered by the Allied World Excess Policy.

4. Second, if the Debtors' co-defendants in the Coverage Litigation, Gerald F. Hug and Kurt W. Streams, do not prevail, it seems highly likely that they would seek indemnification from other sources—most obviously, the Debtors. The claims for indemnifications would increase the number of claims and reduce the recoveries for the Debtors' existing creditors, including the unsecured creditors that are represented by the Committee. Furthermore, presuming that Debtors, along with their co-defendants in the Coverage Litigation, contest the Allied World's Complaint for Declaratory Judgment, the Debtors' management and legal team will be forced to dedicate time and resources to the Coverage Litigation which are better spent reorganizing their business in chapter 11.

5. Allowing Allied World relief from the automatic stay (which Allied World has already violated), will deprive the Debtors of the benefit of the automatic stay at a point in these cases when it is needed most. Granting stay relief and allowing Allied World an opportunity to

adjudicate an estate asset outside of this Court will only exacerbate the challenges the Debtors face. In the immediate future, the Debtors will be forced to demonstrate the viability of their revamped business plan, secure additional DIP financing, and commence the negotiation and confirmation of a chapter 11 plan. Losing the benefit of the stay would be detrimental to the Debtors' ability to reorganize, to the prejudice of all their creditors. Preserving the stay in this case will ensure that the purposes of the automatic stay are fulfilled and potentially preserve assets for the Debtors' estates. For the reasons set forth below, the Allied World's Motion should be denied.

## ARGUMENT

**I.    Application of the Automatic Stay to the Coverage Litigation Supports the Orderly Rehabilitation of the Debtors.**

6.    Applying the automatic stay to the Coverage Litigation is consistent with common sense, judicial economy and the purposes of the automatic stay. The automatic stay contemplated by section 362(a) is one of the most fundamental protections afforded by the Bankruptcy Code. *See* H.R. Rep. No. 95–595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97. The "breathing spell" of the automatic stay was "designed to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). Indeed, the automatic stay specifically applies to actions related to the scope of the Debtor's insurance coverage. *Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965, 968–70 (S.D.N.Y. 1983).

7.    The stay as applied to the Coverage Litigation, supports these broad purposes and policies underpinning the automatic stay. In contrast, allowing the Coverage Litigation to proceed

- 4 -

would require the Debtors to be distracted by litigation concerning the scope and application of the insurance coverage, which will have a direct impact on the estates. Forcing the Debtors to evaluate their rights to coverage and their undoubted exposure in the Coverage Litigation now, rather than deferring such litigation until further progress has been made in these chapter 11 cases, interferes with the Debtors' orderly rehabilitation prospects.

**II.     Allied World Has Not Shown Cause to Lift the Automatic Stay.**

8. Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90); *In re The Score Bd. Inc.*, 238 B.R. 585 593 (D. N.J. 1999) ("Cause is viewed as a broad and flexible concept"). Accordingly, the decision to lift the automatic stay under Section 362(d)(1) of the Bankruptcy Code is within the sound discretion of the Bankruptcy Court. See, e.g., In re Rosen, 208 B.R. 345, 355 (D.N.J. 1997).

9. In addition to the twelve-factor *Mid-Atlantic* test described in the Motion, courts also generally employ a balancing test to determine whether the totality of circumstances supports permitting pending litigation to proceed in a non-bankruptcy forum. *Telegroup*, 237 B.R. 87, 91–92 (Bankr. D. N.J. 1999). Courts weigh:

> "whether (a) any great prejudice to the bankruptcy estate or the debtor will result from continuation of the civil suit, (b) the hardship to the [movant] by maintenance of the stay considerably outweighs the hardship to the [non-moving party], and (c) the [movant] has a probability or [sic] prevailing on the merits [of the claim].

- 5 -

*Telegroup*, 237 B.R. at 91 (brackets in original); *In re SCO Grp., Inc., et al.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (stating that the court has "developed a three-prong balancing test to determine whether to grant relief from the stay" referring to the *Telegroup* test while stating that the court "also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay"). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor." *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2020 WL 1580244, at *5 (quoting *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003)).

10. Here, the only harm identified by Allied World is the prolonged "uncertainty" regarding their rights during the delay created by the automatic stay. "The automatic stay almost always delays litigants. That, after all, is its purpose, and the reason they call it a 'stay.'" *In re Comdisco, Inc.*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002); *see also In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("If the mere assertion that delay ... was sufficient to establish cause, the imposition of the stay to protect a debtor would prove meaningless."); *In re Madison Hotel Assocs.*, 18 B.R. 218, 219 (Bankr. W.D. Wis. 1982) ("[R]elief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights . . . .").

11. Indeed, providing a respite from resource-draining aspects of litigation is the main reason for the automatic stay. If any pre-petition plaintiff could establish cause merely by declaring a delay in the enforcement of its rights, the protection of the automatic stay would be rendered meaningless. The Coverage Litigation here is in its infancy—in fact, it was filed post-petition—and it is clear to the Committee that allowing the Coverage Litigation to proceed could derail the Debtors' reorganization prospects.

**III.   The Mid-Atlantic Factors Do Not Support Litigation in a Non-Bankruptcy Forum.**

12.   Beyond the general balancing of harms, application of the twelve *Mid-Atlantic* favors factors actually supports a finding that the Court should not allow Allied World to pursue the Coverage Litigation in a non-bankruptcy forum.[3]  To start, it is an indisputably basic fact that there has been little progress in the Coverage Litigation because Allied World commenced the action post-petition.  Accordingly, the eleventh factor (whether the parties are ready for trial) strongly supports leaving the stay in place.

13.   The Committee also believes that, despite Allied World's representations, the second (lack of interference with the bankruptcy), sixth (whether the action primarily involves third parties), and seventh (whether litigation in another forum would prejudice other creditors) factors actually support leaving the automatic stay in place.  The outcome of the Coverage Litigation (if allowed to proceed in District Court) could have a direct impact on the pool of assets available to the Debtors' creditors if (a) the Debtors inadvertently forfeit an interest to coverage, or (b) if the co-defendants later make a claim in the Debtors' bankruptcy for indemnification.  And

---

[3]   The twelve factors considered in *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R 11, 130 (Bankr. D. N.J. 2003) are as follows:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

while Debtor SITO Mobile, Ltd., may not be the current focus of Allied World's Coverage Litigation, it certainly is a defendant. The Complaint filed in the District Court makes that clear, stating:

> "SITO is not a defendant in the SEC Enforcement Action, and SITO has not requested that Allied World provide SITO with coverage in connection with the SEC Enforcement Action. However, as the Named Insured under the Allied World Excess Policy, Allied World ***has named SITO as a party-defendant to this action*** in abundance of caution."

Motion, Exhibit K, Footnote 1 (emphasis added).

14. As stated above, the Debtors and their unsecured creditors risk substantial harm by allowing the Coverage Litigation to proceed in District Court. Therefore, the twelfth factor (impact of the stay on the parties and the balance of the harms) also support leaving the automatic stay in place. Based on the foregoing, Allied World has failed to make the necessary factual case that cause exists to warrant relief from the automatic stay to pursue the Coverage Litigation. To the contrary, the *Mid-Atlantic* factors weigh heavily in favor of maintaining the automatic stay.

## CONCLUSION

15. The Committee raises these arguments in favor of maintaining the automatic stay because the loss of valuable estate assets could meaningfully impact the unsecured creditors by reducing the pool of assets available for distribution at the end of the Debtors' chapter 11 cases. The risks here are quite serious—if the Debtors inadvertently fail to protect estate assets, it is the Committee's constituents who will be harmed. Accordingly, the Court should deny the Motion and enforce the automatic stay by barring continuation of the Coverage Litigation.

**WHEREFORE**, the Committee respectfully requests that the Court sustain this Opposition, deny the Motion, and grant such other and further relief as the Court deems just and proper under the circumstances.

Date: January 26, 2021    By: */s/ Gary F. Eisenberg*
　　　　　　　　　　　　　　　　**PERKINS COIE LLP**
　　　　　　　　　　　　　　　　1155 Avenue of the Americas,
　　　　　　　　　　　　　　　　New York, NY 10036-2711
　　　　　　　　　　　　　　　　Telephone: (212) 262-2902
　　　　　　　　　　　　　　　　Fax: (212) 977-1632
　　　　　　　　　　　　　　　　Gary F. Eisenberg (GEisenberg@perkinscoie.com)
　　　　　　　　　　　　　　　　Amir Gamliel (AGamliel@perkinscoie.com)
　　　　　　　　　　　　　　　　(*admitted pro hac vice*)

　　　　　　　　　　　　　　　　*Counsel for the Official Committee of Unsecured Creditors*