**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**GENOVA BURNS LLC**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone: (973) 467-2700
Fax: (973) 467-8126
*Counsel for SITO Mobile Solutions, Inc., SITO Mobile, Ltd., and SITO Mobile R&D IP, LLC.*
**DANIEL M. STOLZ**
**DONALD W. CLARKE**

| | |
|---|---|
| In Re:<br><br>**SITO MOBILE SOLUTIONS, INC.[1]**,<br><br>Debtor. | Case No.:  20-21436<br><br>Judge: Honorable Stacey L. Meisel<br><br>Chapter: 11 |
| In Re:<br><br>**SITO MOBILE, LTD.[2]**,<br><br>Debtor. | Case No.:  20-21435<br><br>Judge: Honorable Stacey L. Meisel<br><br>Chapter: 11 |
| In Re:<br><br>**SITO MOBILE R&D IP, LLC[3]**,<br><br>Debtor. | Case No.:  20-21437<br><br>Judge: Honorable Stacey L. Meisel<br><br>Chapter: 11 |

---

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF (a) FINAL APPROVAL OF DISCLOSURE STATEMENT, AND (b) CONFIRMATION OF JOINT PLAN OF REORGANIZATION

---

[1] The last four digits of the Debtors' Federal Tax Identification Numbers are 3380.  The Debtors' corporate headquarters is located at 123 Town Square Place, #419, Jersey City, NJ  07310.

[2] The last four digits of the Debtors' Federal Tax Identification Numbers are 2844.  The Debtors' corporate headquarters is located at 123 Town Square Place, #419, Jersey City, NJ  07310.

[3] The last four digits of the Debtors' Federal Tax Identification Numbers are 3182.  The Debtors' corporate headquarters is located at 123 Town Square Place, #419, Jersey City, NJ  07310.

## INTRODUCTION

SITO Mobile Solutions, Inc. (hereinafter "**Mobile Solutions**"), SITO Mobile Ltd. (hereinafter "**LTD**") and SITO Mobile R&D IP, LLC. (hereinafter "**R&D**") (collectively the "**Debtors**" or "**SITO**"), submit this memorandum of law (the "**Memorandum of Law**") in support of final approval of the First Modified Disclosure Statement (docket no. 264) and in support of Confirmation of the Second Amended Joint Plan of Reorganization of the Debtors (docket no. 300) (as further modified, revised, supplemented and amended, including all attachments and exhibits thereto, the "**Plan**"), pursuant to Section 1129 of the Bankruptcy Code.  In addition, as set forth herein, the Debtors request a waiver of the fourteen (14) day stay of the Order Confirming the Plan imposed by Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PRELIMINARY STATEMENT

1.      On October 8, 2020 (the "**Petition Date**"), facing significant liquidity constraints, the Debtors commenced these Chapter 11 cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

2.      The Plan is the culmination of the Debtors' efforts to raise funds to reach agreement with their creditors and emerge from Chapter 11.  The Chapter 11 Plan was negotiated vigorously with the Official Committee of Unsecured Creditors (the "**Committee**") and the Committee's counsel.   The Committee has supported confirmation of the within Plan.

3.      As set forth in the Amended Certification of Ballots filed in this matter (docket no. 297) all creditors who have filed ballots have voted to accept the Debtors' Plan.  Not a single creditor filed a ballot rejecting the Debtors' Plan.

4.      The only objection to confirmation that has been filed is that filed by the Office of the United States Trustee (the "**UST**").  The objection of the UST raises issues with regard to the releases to be granted to the Plan Funders under the Plan and with regard to substantive consolidation of the three SITO companies for bankruptcy purposes.  Those issues will be addressed in the within Memorandum.

5.      As set forth herein, in the Certification of Daniel M. Stolz and the Certification of Thomas Candelaria, in support of confirmation of the Plan (the "**Certifications**") and as the testimony at the Confirmation Hearing will establish, the Plan meets all of the requirements under the Bankruptcy Code to be approved and confirmed.  Accordingly, the Debtors request that the Court overrule the UST objection (to the extent not otherwise resolved), and confirm the Plan.

## **STATEMENT OF FACTS**

**General Background Regarding the Chapter 11 Cases.**

6.      On the Petition Date, the Debtors commenced these cases by filing separate Chapter 11 Petitions for relief, pursuant to the applicable provisions of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 cases, is set forth in the Declaration of Thomas Candelaria in support of the Debtors' First Day Motions (docket no. 32).

7.      The Debtors continue to manage and operate their businesses as Debtors-in-Possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8.      By Order dated November 13, 2020 (docket no. 55), the Court directed joint administration of these three Chapter 11 Cases, with Mobile Solutions serving as the "lead case".

9.      On November 4, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors, pursuant to §1102(a) of the Bankruptcy Code (docket no. 19). No trustee or examiner has been appointed in the Chapter 11 cases.

10.     By Order dated December 1, 2020 (docket no. 74), the Court authorized the Committee to retain Perkins Coie, LLP as its counsel.

11.     The Plan and Disclosure Statement were originally filed on June 10, 2021 (see docket nos. 228 and 229).

12.     By Order dated July 20, 2021 (docket no. 262), the Court approved the Disclosure Statement on an interim basis and fixed deadlines and dates with regard to solicitation of the Plan, the hearing on confirmation of the Plan, and also approved certain notice and procedures with regard thereto.

13.     On July 21, 2021, the Debtors filed their First Modified Chapter 11 Plan and First Modified Disclosure Statement (docket nos. 263 and 264).

14.     On September 10, 2021, the Debtors filed their Second Amended Joint Plan.  The Second Amended Joint Plan merely increases the Plan Funding and does not negatively impact any party who has voted on the Plan.

15.     The Disclosure Statement is the product of the Debtors' extensive review and analysis of the Debtors' business, assets and liabilities, and circumstances leading

to the Chapter 11 filings.  It provides information regarding:  (a) the terms of the Plan, including a summary of the classifications and treatments of all classes of claims and interests; (b) the distribution to holders of allowed claims; (c) the effect of the Plan on holders of claims and interests and other parties in interest thereunder; (d) the estimated amount of claims that ultimately will be allowed; (e) certain risk factors to consider that may affect the Plan; (f) certain tax issues related to the Plan and distribution; and (g) the means for implementation of the Plan.

16.    The Plan classifies holders of claims and interests into certain classes for all purposes, including with respect to voting rights, if any, as follows:

| CLASS | STATUS | VOTING RIGHTS |
|---|---|---|
| 1-Priority Claims | Unimpaired | Deemed to Accept |
| 2-Pre-Petition Noteholders | Impaired | Entitled to Vote |
| 3-General Unsecured Claims | Impaired | Entitled to Vote |
| 4-Owners of Equity Interests | Unimpaired | Deemed to Accept |

17.    As set forth in the chart above, Classes 2 and 3 were the only Classes of creditors or interests that were entitled to vote on the Plan (the "Voting Classes").  All other holders of claims or interests were not entitled to vote on the Plan, because each holder holds a claim or interest presumed to accept the Plan.  As such, the Plan Proponents did not solicit votes from holders of claims in Class 1 or Class 4.

18.    The deadline for the Voting Classes to cast ballots was set by Order of this Court as August 30, 2021.  As set forth in the Amended Certification of Ballots of Daniel M. Stolz, regarding the solicitation of votes and tabulation of ballots cast, all 12 creditors who cast ballots voted to accept the Plan.  The ballots received represented over $6 million of claims.

5

19.    The deadline to object to confirmation of the Plan and final approval of the adequacy of the Disclosure Statement was also set for August 30, 2021.

20.    No objections were filed with regard to the final approval of the Disclosure Statement.

21.    The only objection to confirmation of the Plan was that filed by the Office of the United States Trustee (docket no. 292), which objection will be addressed hereinafter in this memorandum.

22.    Submitted in support of confirmation of the Plan are the Certifications of Daniel M. Stolz, Esq., counsel to the Debtors and Thomas Candelaria, the Debtors' CEO.

23.    The facts set forth in the Stolz and Candelaria Certifications are incorporated herein as if set forth verbatim.

## THE DISCLOSURE STATEMENT SATISFIES THE
## REQUIREMENTS OF §1125 OF THE BANKRUPTCY CODE

24.    The Debtors' request that the Court approve, on a final basis, the Disclosure Statement as containing "adequate information", in accordance with §1125 of the Bankruptcy Code.  Section 1125(b) of the Bankruptcy Code states that "an acceptance or rejection of a Plan may not be solicited…unless, at the time of or before such solicitation, there is transmitted to such holder the Plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information".  11 U.S.C. §1125(b).  In turn, §1125(a) of the Bankruptcy Code defines "adequate information as:

> "Information of a time, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of

6

the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, when a successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and any other parties in interest, and the cost of providing additional information."

11 U.S.C. §1125(a)

25.    The primary purpose of a Disclosure Statement is to provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the Plan.  See, Krystal Cadillac-Oldsmobile GMC Trust, Inc. v. Gen. Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003); see also, Century Glove, Inc. v. First Am. Bank, N.Y., 860 F.2d 94, 100 (3d Cir. 1988).

26.    Bankruptcy Courts have broad discretion in determining whether a Disclosure Statement contains adequate information, based upon the unique facts and circumstances of each case.  See, Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) ("from the legislative history of §1125, we discern that adequate information will be determined by the facts and circumstances of each case."); Lisanti v. Lubetkin, 329 B.R. 491, 507 (D.N.J. 2005), aff'd, 241 Fed. App'x 1, (3d Cir. August 2, 2007) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a Disclosure Statement.").

27.    In accordance with §1125 of the Bankruptcy Code, the Disclosure Statement provides "adequate information" to allow holders of claims entitled to vote

to make an informed decision on the Plan.  As noted above, the Disclosure Statement is the product of the Debtors' extensive review and analysis of the Debtors' business, assets and liabilities, and circumstances leading to the Chapter 11 cases.  The Disclosure Statement provides information regarding: (a) the terms of the Plan, including a summary of the classification and treatment of all classes of claims and interests; (b) the distribution to holders of allowed claims; (c) the effect of the Plan on holders of claims and interests and other parties in interest thereunder; (d) the claims asserted against the Debtors and the estimated amount of claims that will ultimately be allowed; (e) certain risk factors to consider that may affect the Plan; (f) certain tax issues related to the Plan and distribution; and (g) the means for implementation of the Plan.  Accordingly, the Debtors believe that the Disclosure Statement complies with all aspects of §1125 of the Bankruptcy Code, contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Plan, and therefore should be approved on a final basis.

## THE PLAN MEETS ALL
## APPLICABLE CONFIRMATION REQUIREMENTS

28.    To obtain confirmation of the Plan, the Plan Proponents must demonstrate that the Plan satisfies the applicable provisions of §1129 of the Bankruptcy Code by a preponderance of the evidence.  In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (D.Del. 2006).  As set forth below and based upon the record and filings in these Chapter 11 Cases, and as will be demonstrated at the Confirmation Hearing, the Plan meets all of the applicable requirements of §1129 of the Bankruptcy Code and should be confirmed.

## I.   Section 1129(a)(1) of the Bankruptcy Code

29.   The Plan complies with §1129(a)(1) of the Bankruptcy Code, which provides that a Plan may be confirmed only if "the Plan complies with the applicable provisions of this Title."  11 U.S.C. §1129(a)(1); see also In re Eagle-Picher Inds., Inc., 203 B.R. 256, 270-73 (S.D.Ohio 1996).

30.   The legislative history of §1129(a)(1) of the Bankruptcy Code indicates that the primary focus of this requirement is to ensure that a Plan complies with §§ 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests, and the contents of the Plan, respectively.  See S. Rep. No. 95-989, at 126, 1978, reprinted in 1978 U.S.C.C.A.N. 5787, 5912 (1978); H.R.Rep.No. 95-595 at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368 (1977);  see also In re G-1 Holdings, Inc., 420 B.R. 216, 258 (D.N.J. 2009); In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 233 (Bankr. D.N.J. 2000).  Section 1122 of the Bankruptcy Code provides that claims or interests within a given class must be "substantially similar" to the other claims or interests in that class.  11 U.S.C. §1122(a).  Courts consistently have held that §1122(a) of the Bankruptcy Code is satisfied so long as similar claims are classified together. See, e.g. In re Armstrong World Industry, Inc., 348 B.R. 136, 160 (D.Del. 2006); Eagle-Picher Indus., 203 B.R. at 270; In re Tribune Co., 476 B.R. 843, 854 (Bankr. D.Del. 2012); see also In re Jersey City Medical Center, 817 F.2d 1055, 1061 (3d Cir. 1987).

31.   The Debtors' Plan classifies claims and interests in accordance with §1122 of the Bankruptcy Code, as each Plan class contains claims or interests that share the same priority status, contractual rights, and enforcement rights against the Debtors'

estates.  In addition, valid business, factual and legal reasons exist for the separate classification of claims and interests.

32.    Accordingly, the classification of claims and interests under this Plan is appropriate and should be approved.

33.    Section 1123(a) of the Bankruptcy Code requires that a Chapter 11 Plan: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide for equality of treatment within each class; (e) provide adequate means for the Plan's implementation; (f) provide for the prohibition of non-voting equity securities and provide appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of the organized companies' officers and directors.  See 11 U.S.C. §1123(a).  The Debtors' Plan fully complies with each of the requirements of §1123(a) of the Bankruptcy Code.  The Plan clearly sets forth which classes of claims are impaired and unimpaired, and provides a clear explanation of the treatment of all claims.

34.    In accordance with the requirements of §1123(a)(5), the Plan provides adequate means for implementation.

35.    Section 1123(a)(6) requires that a debtor's corporate reorganizational documents prohibit the issuance of non-voting equity securities.  The Plan does not contemplate reorganization or amended organizational documents.   Thus, this provision is not applicable to the Plan.

36.     Finally, §1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interest of creditors and equity security holders and with public policy with respect the manner of selection of any officer, directors, or trustees under the plan…".  11 U.S.C. §1123(a)(7).

37.     The Plan appoints Daniel M. Stolz, Esq. as Plan Administrator and discloses that the existing corporate officers of the Debtors will remain in place following the Effective Date of the Plan.

## II.     Section 1129(a)(2) of the Bankruptcy Code

38.     The Plan complies with §1129(a)(2) of the Bankruptcy Code, which requires that a plan proponent comply with applicable provisions of the Bankruptcy Code.  The legislative history accompanying §1129(a)(2) indicates that the principal purpose of this section is to ensure compliance with disclosure and solicitation requirements set forth in §1125 of the Bankruptcy Code.  See, In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000).

39.     The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of §1125 regarding disclosure and plan solicitation.  In the instant cases, the Debtors solicited votes to accept the Plan from Class 2 and Class 3 creditors, as such classes are impaired.  Pursuant to this Court's Order granting interim approval of the Disclosure Statement and fixing procedures for solicitation of votes and the hearing on confirmation, the Court determined, on an interim basis, that the Disclosure Statement contained adequate information within the meaning of §1125 of the Bankruptcy Code.  The Court further approved the form of notice of the hearing on final approval of the Disclosure Statement and confirmation of

the Plan, and further approved the manner and deadlines for solicitation of acceptances or rejections of the Plan.

40.    The Debtors have complied with the Interim Approval and Procedures Order, and an Affidavit of Service has been filed with the Court.  The Debtors have further complied with all applicable provisions of the Bankruptcy Code including §1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  As a result, the Plan meets the requirements of §1129(a)(2) of the Bankruptcy Code.

### III.    Section 1129(a)(3) of the Bankruptcy Code

41.    The Plan complies with §1129(a)(3) of the Bankruptcy Code, which requires that that Plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3).  Courts consider a Plan as proposed in good faith "if there is a reasonable likelihood that the Plan will achieve a result consistent with the standards prescribed under the Bankruptcy Code."  In re Combustion Eng'g., Inc., 391 F.3d 190, 247 (3d Cir. 2004), see also In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999).

42.    In determining whether a Plan will succeed and accomplish goals consistent with the Bankruptcy Code, Courts look to the terms of the Plan itself, and not the proponent of the Plan.  See In the Matter of Sound Radio, Inc., 93 B.R. 849, 853 (Bankr. D.N.J. 1988), affirmed in part, remanded in part on other grounds 103 B.R. 521 (D.N.J. 1989), affirmed 908 F.2d 964 (3d Cir. 1990); see also Combustion Eng. 391 F.3d at 246.

43.    The Debtors have structured and proposed the within Plan in a manner that effectuates the objectives and purposes of the Bankruptcy Code.  The Plan is a

product of consensus among the Debtors and the Committee, after extensive arms' length negotiations, which alone demonstrates that the Plan was proposed in good faith. See Eagle-Picher Indus., 203 B.R. at 274.  The Plan contains no provisions that are contrary to state or other laws, nor is there any indication that the Debtors lack the ability to consummate the Plan.  Accordingly, the Debtors submit that they have met the requirements of §1129(a)(3) of the Bankruptcy Code.

### IV.     Section 1129(a)(3) of the Bankruptcy Code

44.     The Plan also complies with §1129(a)(4) of the Bankruptcy Code, which states the following:

> Any payment made or to be made by the proponent, by the debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan incident to the case, has been approved by, or is subject to approval of the court as reasonable.

> 11 U.S.C. §1129(a)(4)

45.     In essence, §1129(a)(4) of the Bankruptcy Code requires that any and all fees promised or received in connection with or in contemplation of the Chapter 11 case must be disclosed and subject to the Court's review.  In re Johns-Manville Corp., 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986), affirmed in part, reversed in part on other grounds 78 B.R. 407 (S.D.N.Y. 1987).

46.     Pursuant to the Plan and other Orders of this Court, all professional fee claims are subject to Court approval.  Accordingly, the Plan complies with the requirements of §1129(a)(4) of the Bankruptcy Code.

### V.    Section 1129(a)(5) of the Bankruptcy Code

47.    Section 1129(a)(5) requires that the plan identify the affiliations of any individual proposed to serve after confirmation of the plan as a director, officer, or voting trustee of the debtor and provides that such service or continuation of service consistent with the interest of creditors and equity holders.  In the instant matter, the Debtors' existing Board of Directors will continue to serve subsequent to confirmation of the Plan.  The Debtors have disclosed that Thomas Candelaria and Lisa Patrick, who currently serve as the Debtors' primary officers, will continue to serve in that capacity. Finally, the Plan discloses that Daniel M. Stolz, Esq., a partner in the firm serving as the Debtors' bankruptcy counsel, will serve as the Plan Administrator.

48.    Based upon the foregoing, the Debtors have complied with §1129(a)(5) of the Bankruptcy Code.

### VI.    Section 1129(a)(6) of the Bankruptcy Code

49.    Section 1129(a)(6) is inapplicable to the Debtors, as it requires that "any governmental regulatory commission with jurisdiction after confirmation of the plan, over the rates of the debtor, has approved any rate change provided for in the plan, or such rate change are expressly conditioned on such approval."  11 U.S.C. §1129(a)(6). The Debtors' business has no involvement with the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after the Plan's confirmation.

### VII.    Section 1129(a)(7) of the Bankruptcy Code

50.    The Plan satisfies the "best interest of creditors" test set forth in §1129(a)(7) of the Bankruptcy Code.  This test requires that, with respect to each

14

impaired class of claims or interests, each holder of such claims or interests (a) has

accepted the Plan, or (b) will receive or retain property of a value not less than that

which such holder would receive or retain if the Debtors were liquidated under Chapter

7 of the Bankruptcy Code.  See Armstrong, 348 B.R. at 165-66; see also In re Tranel,

940 F.2d 1168, 1172 (8th Cir. 1991); Eagle-Picher Industries, 203 B.R. at 266.

51.    When considering whether a Plan is in the "best interest of creditors", the

Court is not required to consider any alternative to the Plan, other than the dividend

projected in liquidation of all the Debtors' assets under Chapter 7 of the Bankruptcy

Code.  See, e.g. In re Jartran, Inc., 44 B.R. 331, 389-93 (Bankr. N.D.Ill. 1984).

52.    The instant Plan satisfies §1129(a)(7) of the Bankruptcy Code.  In a

liquidation, it is unlikely that creditors would receive any distribution.  In a liquidation,

the Plan Proponents would not be advancing the exit financing, in excess of $5 million,

and the ongoing IP Claims would not be viable.

53.    Indeed, considering the costs of liquidation and the outstanding

administrative expenses of these Chapter 11 Cases, in a liquidation, the Debtors' estates

would likely be administratively insolvent.

54.    No party has objected to confirmation under the "best interest test".  All

classes of creditors have unanimously voted to accept the Debtors' Plan.  Thus, the

Debtors submit that they have satisfied the requirements of §1129(a)(7) of the

Bankruptcy Code.

**VIII.  <u>Section 1129(a)(8) of the Bankruptcy Code</u>**

55.    Section 1129(a)(8) of the Bankruptcy Code requires that "with respect to

each class of claims or interests…(A) such class has accepted the plan or (B) such class

is not impaired under the plan." 11 U.S.C. §1129(a)(8). Pursuant to §1126(c) of the Bankruptcy Code, a class of claims accepts the plan if holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class vote to accept the plan. 11 U.S.C. §1126(c).

56.     Claims in Classes 1 and 4 are unimpaired under the Plan, and pursuant to §11126(f) of the Bankruptcy Code, are conclusive presumed to have voted to accept the Plan. Thus, the requirements of §1129(a)(8) have been satisfied as to Class 1 and Class 4.

57.     As set forth above and in the Certification of Ballots, the holders of Classes 2 and 3 have unanimously voted to accept the Plan. Thus, as to the impaired and accepting requirements of §1129(a)(8) of the Bankruptcy Code, such requirements have been satisfied.

### IX.     Section 1129(a)(9) of the Bankruptcy Code

58.     The Plan satisfies §1129(a)(9) of the Bankruptcy Code, which requires a plan to provide for the payment of certain priority claims in full on the Effective Date in the allowed amounts of such claims.

59.     In accordance with §1129(a)(9), the Plan provides that, unless otherwise agreed by the holder of an administrative or priority claim, each holder of an allowed administrative or an allowed priority claim shall be paid in full, in cash, as soon as reasonably practicable after the Effective Date of the Plan.

60.     Accordingly, the Plan satisfies the requirements set forth in §1129(a)(9) of the Bankruptcy Code.

### X.    <u>Section 1129(a)(10) of the Bankruptcy Code</u>

61.    Section 1129(a)(10) of the Bankruptcy Code provides the following:  if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.  11 U.S.C. §1129(a)(10), see also <u>In re Martin</u>, 66 B.R. 921, 924 (Bankr. D.Mont. 1986).

62.    As set forth in the Certification of Ballots, all impaired creditors have voted to accept the Plan.  Accordingly, the Debtors submit that the requirments of §1129(a)(10) of the Bankruptcy Code are satisfied.

### XI.    <u>Section 1129(a)(11) of the Bankruptcy Code</u>

63.    The Plan satisfies §1129(a)(11) of the Bankruptcy Code, which provides that the Court may confirm a plan only if "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."  11 U.S.C. §1129(a)(11).  This provision requires Courts to determine whether the Debtors' Plan offers a reasonable prospect of success and is workable.  Collier on Bankruptcy at §1129.03(11); <u>In re Cellular Info Sys., Inc.</u>, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994).

64.    Section 1129(a)(11) does not require a guarantee of the Plan's success, rather, the proper standard is whether the Plan offers a "reasonable assurance" of success.  <u>In re Johns-Manville Corp.</u>, 843 F.2d 636, 649 (2nd Cir. 1988).

65.    In the instant matter, the Plan Funders have represented that the exit financing is readily available to fund the distributions required on the Effective Date of the Plan.  The remainder of the distributions are contingent upon success by the Debtors

under the IP Litigation and creditors understand the risks associated with such litigation.

66.     Based upon the foregoing, the Debtors' respectfully submit that they have satisfied the requirments of §1129(a)(11) of the Bankruptcy Code.

### XII.    Section 1129(a)(12) of the Bankruptcy Code

67.     The Plan complies with §1129(a)(12) of the Bankruptcy Code, which requires that, as a condition precedent to the confirmation of a plan, "all fees payable under §1930 of Title 28, as determined by the Court at the hearing on confirmation of the plan, have been paid or the plan provides for payment of such fees on the Effective Date of the plan." 11 U.S.C. §1129(a)(12).  The Plan specifically provides that all fees payable will be paid on or prior to the Effective Date of the Plan.  As such, the Plan complies with §1129(a)(12) of the Bankruptcy Code.

### XIII.    Section 1129(a)(13) of the Bankruptcy Code

68.     Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the within Plan, as it requires that a plan of reorganization provide for the continuation of all retiree benefits at the level established by agreement or by court order pursuant to §1114 of the Bankruptcy Code.  The Debtors have no retiree benefit plans that are governed by §1114.  Accordingly, §1129(a)(13) of the Bankruptcy Code is inapplicable to the within Plan.

### OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE

A.    The Plan release, exculpation and injunction provisions are appropriate and should be approved.

69.     Article 10.04 of the Plan provides that, in consideration for the Plan Funders providing the Plan Funding proceeds, the Plan Funders and any of their

successors or assigns, directly or indirectly, individually or collectively, shall be deemed released under the Plan from any and all claims, obligations, rights, suits, damages, causes of action, etc.

70.     No party other than the Plan Funders are to receive a release under the Plan.

71.     Specifically excluded from the release set forth in Section 10.04 are claims or causes of action arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any person.

72.     The releases to the Plan Funders are appropriately tailored to the facts and circumstances of these Chapter 11 Cases, are supported by more than ample consideration, and are an integral part of the Plan.  The releases provide an appropriate level of protection to the Plan Funders.  Accordingly, the releases represent the sound and valid exercise of the Debtors' business judgment and are permissible under §1123(b)(6) of the Bankruptcy Code.

73.     Generally, a debtor may release claims under §1123(b)(3)(A) of the Bankruptcy Code, "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."  U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.), 426 B.R. 114, 143 (Bankr. D.Del. 2010).

74.     Courts in the Third Circuit typically assess the propriety of a release in the context of a Chapter 11 Plan by reviewing the five "zenith factors":

> (a)     Whether there is any identity of interests between the Debtor and the third party; (b) whether the third party has made a substantial contribution to the Debtors' reorganization; (c) the release is essential to the Debtors'

> reorganization; (d) whether a substantial majority of
> creditors support the release; and (e) whether the Plan
> provides for payment of all or substantially all of the claims
> in the class or classes affected by the release.

See In re Indianapolis Downs LLC, 486 B.R. 286, 303 (Bankr. D.Del. 2013) (citing In re Zenith Elecs. Corp., 241 B.R. 92 (Bankr. D.Del. 1999).

75.    No one factor is required to establish if releases should be approved. These factors simply provide guidance to the Court's determination of fairness.  In re Wash. Mut. Inc., 442 B.R. 314, 346 (Bankr. D.Del. 2011).

76.    Initially, there is an identity of interests between the Debtors and the Plan Funders who shall be receiving the release, in that they share a common goal with the Debtors and their creditors, which is to successfully pursue the IP Litigation and pay all claims of creditors.  See In re Tribune, 464 B.R. 126, 187 (Bankr. D.Del. 2011), modified 464 B.R. 208 (Bankr. D.Del. 2011); Zenith, 241 B.R. at 110.

77.    In the instant matter, the Plan Funders have advanced, pursuant to authorization of this Court, in excess of $1.2 million of Debtor-in-Possession loans, which allowed the Debtors to continue to operate during these Chapter 11 proceedings. The Debtors have represented to the Court that the Debtors' IP Litigation Counsel has advised that the continuation of the Debtors' business operations enhances the strength and viability of the IP Claims which will provide for distributions to Classes 2 and 3 following the Effective Date of the Plan.

78.    In addition to the foregoing, notwithstanding the fact that the Plan Funders were granted superpriority administrative status for the repayment of the Debtor-in-Possession loans and the interest accrued thereon, the Plan Funders have agreed to convert the Debtor-in-Possession loans, in their entirety, to stock ownership of Ltd.,

essentially subordinating those Debtor-in-Possession loans to all classes of creditors of these bankruptcy estates.

79.    It is respectfully submitted that the foregoing alone would justify the grant of releases to the Plan Funders.

80.    In addition to converting the Debtor-in-Possession loans to stock, the Plan Funders shall be advancing to the Debtors the approximate sum of $5.5 million in exit financing, which shall be used to pay administrator expenses of these Chapter 11 cases, payment in full of priority tax and wage claims, payment of a 20% cash dividend to Class 3 unsecured creditors, and provide operating capital, so that the Debtors may continue their essential operations subsequent to the Effective Date of the Plan.

81.    In addition to the foregoing, the Plan Funders, who are substantial Class 2 Noteholders, have agreed to the treatment under the Plan, pursuant to which the Noteholders shall receive no distribution on the Effective Date of the Plan, even though Class 3 unsecured creditors will receive a 20% cash distribution on the Effective Date of the Plan.

82.    Without the support and Debtor-in-Possession loans from the Plan Funders, the Debtors never could have reached the point where they were able to successfully negotiate the terms of a consensual Plan with their creditors and seek confirmation of a reorganization Plan in these Cases.

83.    The releases to the Plan Funders are essential to the Plan itself.  Without such releases, the Debtors would not have been able to build the extraordinary level of consensus with respect to the Plan and consummate transactions contemplated thereby. Importantly, the releases were the product of arms-length negotiations between and

among the Debtors and the Plan Funders, and the Plan releases have been supported by Creditors' Committee.

84.    As set forth above, the releases to be granted to the Plan Funders are narrowly drawn and exclude gross negligence, willful misconduct, etc.  It is important to note that the Debtors are unaware of any claims **that exist against the Plan Funders**.

## THE OBJECTION BY THE OFFICE OF THE
## UNITED STATES TRUSTEE TO THE PLAN RELEASES

85.    The Debtors recognize the general concerns that have been expressed by the public, congress, the United States Trustee and the Courts with regard to controversial, broad third party releases contained in many prominent Chapter 11 cases pending before Courts across the country.

86.    The Debtors recognize and respect the obligation of the Office of the United States Trustees to assure that Plans do not overreach by granting broad and unwarranted third party releases.

87.    It is respectfully submitted that the within Chapter 11 Cases are vastly different than they prominent cases which currently are causing concern.  First, there is no evidence of potential liability of the Plan Funders in this case.  Second, the releases have been narrowly and appropriately drawn.  Third, the consideration being paid by the Plan Funders in this case is proportionate to the relief provided, in the form of the limited releases granted.

88.    It is respectfully submitted that no party would provide the several forms of substantial consideration being provided by the Plan Funders in these cases, without some form of release.

89.     Based upon the foregoing, on the record before this Court, the Debtors submit that the releases provided in Article 10.04 are justified, in the best interest of the Debtors' creditors and should be approved under §1123(b)(3)(A) of the Bankruptcy Code.

90.     In addition to the foregoing, it should be noted that the releases to the Plan Funders have been clearly set forth in bold type face in the Plan and that creditors have unanimously voted to accept the Plan, thereby rendering such releases consensual.

91.     In the Third Circuit, where releasing parties have consented to a provision in the Plan of Reorganization that releases claims against non-debtors, such releases will be approved on the basis of general principals of contract law.  See, <u>First Fed. Bank v. McAteer</u>, 985 F.2d 114, 118 (3d Cir. 1993); see also <u>Indianapolis Downs</u>, 486 B.R. at 305; <u>Spansion</u>, 426 B.R. at 144.

92.     In the present case, the release provisions were highlighted in the Plan and all creditors casting ballots voted in favor of the Plan.

## THE EXCULPATION PROVISIONS

93.     Article 10.05 of the Plan provides for exculpation to the Debtors, the Plan Funders, the Creditors' Committee, and their respective officers, directors, agents, financial advisors, attorneys, employees, holders of interests, members, affiliates and representatives (the "Exculpated Parties").

94.     No party, including the Office of the United States Trustee, has objected to the Exculpation Provisions and such provisions are consistent with those contained in Plans that have been confirmed by Courts in this District.

95.    The Exculpation Provision has a narrow and discrete purpose: to protect the Exculpated Parties, who made significant contributions to the success of these Chapter 11 Cases, without relieving any party from liability for gross negligence or willful misconduct.

96.    Exculpation Provisions are appropriate where the Exculpated Parties have participated in good faith and provided substantial contribution to a Debtors' reorganization effort.  See In re PWS Holding Corp., 228 F.3d 224, 246-47 (3d Cir. 2000); see also In re Nichols Midway Pier, No. 03-49462, 2010 WL2034542 at *14 (Bankr. D.N.J. May 21, 2010); In re Health Diagnostic Lab, Inc., 551 B.R. 218, 234 (Bankr. E.D.Va. 2016).

97.    The Exculpation Provisions set forth in Article 10.05 of the Plan does not amount to a third party release, has no effect on liability that they Debtors determine to have constituted a gross negligence or willful misconduct and are narrowly tailored to limit the liability to actions related to or arising out of the Chapter 11 case, the formulation, preparation, dissemination, negotiation or implementation of the Plan and related matters.

98.    The Exculpated Parties have participated in good faith in formulating and negotiating the Plan, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled holders of claims or interests, or other unsatisfied parties. Moreover, the Exculpation Provision was important to the development of a feasible, confirmable Plan, and the parties subject thereto participated in the Chapter 11 Cases in reliance upon protections afforded to those constituents by the provision.

24

Accordingly, the Debtors respectfully submit that the Exculpation Provision should be approved.

## THE INJUNCTION PROVISION

99.     The Injunction Provision of Article 10.06 of the Plan is necessary to effectuate the releases and Exculpation Provisions contained in the Plan and to protect the Release Parties and Exculpated Parties from any potential litigation from pre-petition creditors after the Effective Date.  The Injunction Provision, therefore, is a key provision of the Plan, because it enforces the Release and Exculpation Provisions that are critical to the Plan.  As such, to the extent the Court finds that the Release and Exculpation Provisions are appropriate, the Plan Proponents respectfully request that the Injunction Provision be approved in connection therewith.

## SUBSTANTIVE CONSOLIDATION OF THE THREE BANKRUPTCY ESTATES FOR BANKRUPTCY PURPOSES IS WARRANTED IN THIS CASE

100.     Article 10.20 of the Plan provides that only for the purpose of the within Plan, the Debtors' estates shall be deemed substantively consolidated, so that, for purposes of the Plan and any distributions to be made thereunder, the assets of and liabilities of the Debtors shall be deemed consolidated and combined for Plan purposes. Article 10.20 provides that for all other purposes outside the Plan, the Debtors shall be deemed separate entities, as if no consolidation has occurred.

101.     No creditor has objected to substantive consolidation of the within estates. The only quasi objection is that filed by the Office of the United States Trustee, requesting that the Debtors set forth compliance with the test established by the Third

Circuit Court of Appeals in the case of <u>In re Owens Corning</u>, 419 F.3d 195 (3d Cir. 2005).

102.   Under the <u>Owens Corning</u> test, the parties seeking substantive consolidation must show either that "(i) pre-petition, the Debtors disregarded separateness so significantly so that their creditors relied on breakdown of entity boarders and treated them as if one legal entity; or (ii) post-petition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors". Id. at 211.

103.   In support of confirmation, the Debtors have submitted the Certification of Thomas Candelaria, the CEO and Managing Member of the three Debtor entities. Mr. Candelaria has explained that the Debtors operated as one economic unit, with Ltd. serving as the public parent of Mobile Solutions and R&D Holding, the intellectual property utilized by the Debtors and Mobile Solutions conducting day to day operations.

104.   Mr. Candelaria has also set forth in his Certification that both the Debtors and all creditors dealt with the three SITO entities as one economic unit, without regard to separateness.

105.   Mr. Candelaria has further testified in his Certification that the Debtors prepared consolidated financials, transferred funds between them regularly, and operated in all respects as one economic unit.

106.   As set forth by Bankruptcy Judge Papalia in the case of <u>In re SB Building Associates Limited Partnership</u>, 621 B.R. 330 (Bankr. D.N.J. 2020), in situations such as that before this Court, substantive consolidation "will treat all similarly situated

creditors equally, fairly, and in a manner consistent with the way they dealt with the Debtors and the Debtors dealt with them pre and post-petition.  Id. at 371.

107.    Based upon the foregoing, the Debtors respectfully submit that, in the particular circumstances of these Chapter 11 Cases, substantive consolidation is appropriate, fair, and warranted.

## <u>CONCLUSION</u>

108.    For the reasons set forth in this Memorandum of Law, and in the Amended Certification of Ballots, the Certification of Daniel M. Stolz in support of confirmation, and the Certification of Thomas Candelaria in support of confirmation, the Debtors respectfully submit that:

a.    The Disclosure Statement and the Plan fully satisfy all applicable requirements of the Bankruptcy Code and Bankruptcy Rules;

b.    The Disclosure Statement should be approved on a final basis and the Plan should be confirmed by the Court pursuant to the provisions of §1129; and

c.    The 14 day stay of the Confirmation Order should be waived.

**GENOVA BURNS, LLC**
Counsel for Debtors


By: _/s/  Daniel M. Stolz_   .
       DANIEL M. STOLZ

Dated:  September 10, 2021

S:\8658-B SITO Mobile Solutions\6-9-2021 Final Plan and Disclosure Statement\Debtors MOL in supp of Plan 9-9-2021.docx