**PLAN FUNDING AGREEMENT**

$5,500,000                                                                                      September 9, 2021

This **PLAN FUNDING AGREEMENT and PROMISSORY NOTE** (this "Note"), dated as of September 9, 2021, is by and between **GAVIN SCOTTI** and **STEPHEN BAKSA** (the "Plan Funders") and **SITO MOBILE LTD, DEBTOR IN POSSESSION, SITO MOBILE R&D IP, LLC, DEBTOR IN POSSESSION and SITO MOBILE SOLUTIONS, INC., DEBTOR IN POSSESSION** (each referred to as a Borrower and jointly as "Borrowers").

W I T N E S S E T H:

**WHEREAS,** each of the Borrowers has commenced a case under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), jointly administered under case no. 20-21436 (all jointly administered cases, the "Case") and each Borrower has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

**WHEREAS,** the Borrowers have filed a joint plan of reorganization with the Bankruptcy Court (the "Plan") [Doc 263] (and as later amended), the terms of which are incorporated herein by reference, pursuant to which the Plan Funders shall be entitled to certain distributions of cash and warrants to purchase common stock, in each case, in accordance with the terms and provisions of the Plan;

**WHEREAS,** Borrowers have requested Lenders make a post-petition loan and advance to Borrowers for the purpose of funding the Plan, and Plan Funders are willing to do so, subject to the Plan and the terms and conditions contained herein;

**WHEREAS**, the Plan Funders have agreed to make this loan under the specific terms outlined below and for consideration of repayment terms from the IP Litigation Claims[1] as detailed in the Plan.  The IP Litigation Proceeds shall be utilized to pay off this Note and shall be applied as laid out in the Plan and as detailed below in SECTION 2, the Litigation Waterfall Provision.

**NOW, THEREFORE,** in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Plan Funders and the Borrowers mutually covenant, warrant and agree as follows:

**SECTION 1.    FUNDING**

1.1    Exit Funding.  The Plan Funders shall deliver to the Borrowers the exit funding of $5,500,000 (the "Exit Funding") on the effective date of the Plan (the "Plan Effective Date").

---

[1] All capitalized terms not defined herein shall have the meaning attributed them in the Plan.

122633252.1
122716574
153723398.2

1.2 Application of Plan Funding Proceeds. Upon the Plan Effective Date, the following events will happen:

(a) the Borrowers shall promptly deliver the Exit Funding to the Plan Administrator and

(b) the Plan Administrator will distribute the Exit Funding as follows in accordance with the terms of the Plan:

(i) all Court-ordered Administrative Claims shall be paid in full;

(ii) all Priority Claims shall be paid in full;

(iii) all Class 3 Allowed Claims shall be paid at 20% of the Allowed Claim amount;

(iv) $500,000 shall be escrowed for Disputed Interests (the "Disputed Claims Reserve") (and as defined in Section 4.08 of the Plan); and

(v) the remaining Exit Funding will be used as a reserve for operating expenses and fees to the Plan Administrator.

1.3 DIP Facility. Upon the Plan Effective Date and transfer of the Exit Funding to the Plan Administrator, any and all outstanding obligations due under the DIP Facility shall be converted to common stock at $0.18 per share.

**SECTION 2. REPAYMENT; WARRANTS**

2.1 Repayment. From and after the Effective Date, the Plan Administrator shall make distributions on each Quarterly Distribution Date (as defined by the Plan) or such other date as deemed appropriate by the Plan Administrator, from funds available in the Segregated Accounts (as defined by the Plan) funded by the IP Litigation Distributable Proceeds to the Plan Funders:

(a) until the Plan Funders have been repaid the Exit Funding at the following interest rates in each instance, at each moment accruing on the amount of Exit Funding then outstanding:

- During the first year following the Effective Date, 150% per annum;

- During the second year following the Effective Date, 200% per annum;

- During the third year following the Effective Date, 300% per annum; and

- To the extent that any Exit Funding remains outstanding following the fourth anniversary of the Effective Date, such amounts shall be converted to Common Stock of SITO Mobile, Ltd. on a pro rata basis, at a price of $0.18 per share.

2

  (b) Following each distribution, Plan Funders shall apply the distribution *first*, to the Exit Funding, and *second*, to the accrued and unpaid interest. All accrued and unpaid interest on the outstanding amount of the Exit Funding (i) shall be payable on the date on which the Exit Funding has been paid in full, or (ii) to the extent Exit Funding remains outstanding following the fourth anniversary of the Effective Date, shall be converted to Common Stock of SITO Mobile, Ltd. on a pro rata basis, at a price of $0.18 per share.

  (c) For the avoidance of doubt, the Plan Funders shall have no right to receive or to seek repayment of the Exit Funding from any source or assets of the Borrowers except for from the IP Litigation Distributable Proceeds.

  (d) The Disputed Claims Reserve shall be repaid after the Disputed Interests are resolved, or the underlying claims Allowed. The Disputed Claims Reserve shall accrue interest at a rate of 6% per annum. The Disputed Claims Reserve can be repaid at any time as long as the Disputed Claims Reserve is sufficient to cover the amount of the Disputed Interests.

  2.2 <u>Warrants</u>. Upon the Effective Date and transfer of the Exit Funding to the Plan Administrator, SITO Mobile, Ltd. ("<u>SITO Mobile</u>"), shall issue to each Plan Funder a warrant to purchase shares of SITO Mobile's common stock, at a ratio of three (3) shares of common stock per one dollar ($1.00) of Exit Funding provided by each Plan Funder, upon the terms and conditions set forth in the Form of Warrant annexed hereto as **Exhibit A**.

  (a) After the Exit Funding has been as paid per above, the Class 3 Allowed Claims will be paid an additional 40% of their allowed amount.

  (b) The Noteholders will then be paid $2,539,243, representing half of the Secured Note Value. The Noteholders will also be issued common stock of the reorganized debtor at a valuation of $0.18 per share for the remaining balance of their notes ($2,416,408).

**SECTION 3. ADDITIONAL TERMS, WARRANTIES AND COVENANTS**

  3.1 <u>Joint and Several Liability</u>.  The Borrowers shall be jointly and severally liable for the full payment of all amounts due under this Note.

  3.2 <u>Late Fees</u>.  If the IP Litigation Distributable Proceeds are not paid in full within ten (10) business days of the receipt of any portion of the IP Litigation Distributable Proceeds received by the Plan Administrator, without limiting any right or remedy under this Note, the Plan Funders may charge a late fee equal to five percent (5%) of the amount of IP Litigation Distributable Proceeds available for distribution.

  3.3 <u>Representations and Warranties</u>.  Each Borrower hereby represents, warrants and covenants to the Plan Funders the following, the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing requirement until the Exit Funding is paid in full:

(a) <u>Confirmation Order</u>: The Confirmation Order has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by the Plan Funders) and is not subject to any pending appeal or stay.

(b) <u>Use of Proceeds</u>. The Exit Funding shall be used in accordance with the terms and provisions of the Plan and hereunder.

(c) <u>Indebtedness</u>.  Borrower will not, and will not permit any subsidiary, after the date hereof, to, create, incur, assume, suffer to exist, guarantee, or otherwise become or remain, directly or indirectly, liable with respect to any new indebtedness, without in each case the prior written consent of the Plan Funders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Plan Funders), which consent shall not be unreasonably withheld, conditioned, or delayed.

(d) <u>Payments on Indebtedness</u>.  Borrower will not, and will not permit any subsidiary, after the date hereof, to make any payment on account of, or optionally prepay, redeem, defease, purchase, or otherwise acquire, any indebtedness, without in each case the prior written consent of the Plan Funders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Plan Funders), ), which consent shall not be unreasonably withheld, conditioned, or delayed, except to the extent specifically set forth in the Confirmation Order.

(e) <u>Dividends and Redemptions</u>.  Borrower will not, and will not permit any subsidiary, after the date hereof, to make any dividend, distribution or redemption, without in each case the prior written consent of the Plan Funders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Plan Funders), ), which consent shall not be unreasonably withheld, conditioned, or delayed, except to the extent specifically set forth in the Confirmation Order.

(f) <u>Loans and Investments</u>.  Borrower will not, and will not permit any subsidiary, after the date hereof, to, directly or indirectly, make any loan or make or acquire any investment or incur any liabilities (including contingent obligations) for or in connection with any investment, without in each case the prior written consent of the Plan Funders (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender), ), which consent shall not be unreasonably withheld, conditioned, or delayed, except to the extent specifically set forth in the Confirmation Order.

3.4     **Releases.**  In consideration for the Plan Funders providing the Plan Funding Proceeds, the Plan Funders and any of their successors or assigns, directly and indirectly, individually and collectively, shall be deemed released under the Plan from any and all claims, obligations, rights, suits, damages, Causes of Action (including but not limited to Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or the Estate would have been legally entitled

to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their affiliates, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Plan Funder, the restructuring of Claims and Equity Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, any DIP Facility, the DIP Orders or the Plan Funding Agreement, or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence relating to the Debtors taking place on or before the Plan Effective Date. For the avoidance of doubt, the Plan shall contain provisions incorporating the foregoing releases contained in this Section 3.4.

3.5    Binding Effect of Documents. Each Borrower hereby acknowledges, confirms and agrees that: (a) this Note was duly executed and delivered to the Plan Funders by Borrower and is in full force and effect as of the date hereof and Borrower has no valid defense, offset or counterclaim to the waiver.

3.6    New Jersey Law. This Note shall be governed by, and construed in accordance with, the laws of the State of New Jersey. Borrowers hereby consent to personal jurisdiction in the State of New Jersey with respect to any and all matters arising under or relating to this Note.

3.7    Partial Invalidity. If any term or provision of this Note is at any time held to be invalid by any court of competent jurisdiction, the remaining terms and provisions of this Note shall not be affected and shall remain in full force and effect.

3.8    Waivers. Borrowers hereby waive presentment, demand, protest, notice of protest, diligence and all other demands and notices in connection with the payment and enforcement of this Note. EACH BORROWER HEREBY WAIVES ANY RIGHT TO REQUEST A TRIAL BY JURY IN ANY LITIGATION WITH RESPECT TO THIS NOTE AND REPRESENTS THAT COUNSEL HAS BEEN CONSULTED SPECIFICALLY AS TO THIS WAIVER. By accepting this Note, the Plan Funders also waive their right to request a trial by jury.

3.9    Successors and Assigns. This Note shall be binding on each Borrower and its successors and assigns, and shall inure to the benefit of Plan Funders and their successors and assigns. The Borrowers shall not assign this Note without the prior written consent of the Plan Funders. The term "Plan Funders" in this Note shall refer to the Plan Funders or to any other future holder of this Note.

10. Electronic Copy; Counterparts. A signed copy of this Note delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Note and may be delivered in counterparts.

[Signature Page Follows]

IN WITNESS WHEREOF, each Borrower has caused this Plan Funding Agreement and Promissory Note to be duly executed on the date first written above.

WITNESS:  **SITO MOBILE LTD,**
 **DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Operating Officer

WITNESS:  **SITO MOBILE R&D IP, LLC,**
 **DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Operating Officer

WITNESS:  **SITO MOBILE SOLUTIONS, INC.**
 **DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Operating Officer

122633252.1
122716574
153723398.2

IN WITNESS WHEREOF, each Plan Funder has caused this Plan Funding Agreement and Promissory Note to be duly executed on the date first written above.

WITNESS:                                                    **GAVIN SCOTTI**

_____         _____

WITNESS:                                                    **STEPHEN BAKSA**

_____         _____

IN WITNESS WHEREOF, each Borrower has caused this Plan Funding Agreement and Promissory Note to be duly executed on the date first written above.

WITNESS:

**SITO MOBILE LTD,**
**DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Executive Officer

WITNESS:

**SITO MOBILE R&D IP, LLC,**
**DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Executive Officer

WITNESS:

**SITO MOBILE SOLUTIONS, INC.**
**DEBTOR IN POSSESSION**

By: _____
Name: THOMAS CANDELARIA
Title:   Chief Executive Officer

By:

Name:    THOMAS CANDELARIA
Title:    Chief Operating Officer

WITNESS:    **SITO MOBILE SOLUTIONS, INC.**
**DEBTOR IN POSSESSION**

By:

Name:    THOMAS CANDELARIA
Title:    Chief Operating Officer

122633252.1
122716574
153723398.2
153723398.5

IN WITNESS WHEREOF, each Plan Funder has caused this Plan Funding Agreement and Promissory Note to be duly executed on the date first written above.

WITNESS:    **GAVIN SCOTTI**

*[signature]*     9/10/21

WITNESS:    **STEPHEN BAKSA**

122633252.1
122716574
153723398.2
153723398.5

IN WITNESS WHEREOF, each Plan Funder has caused this Plan Funding Agreement and Promissory Note to be duly executed on the date first written above.

WITNESS:                                        **GAVIN SCOTTI**

_____      _____

WITNESS:                                        **STEPHEN BAKSA**

*/s/ Delores Baker*                         */s/ Stephen Baksa*